IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Northern Division

| | | |
|---|---|---|
| THE CINCINNATI SPECIALTY UNDERWRITERS INSURANCE COMPANY | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | |
| HANOVER ARMORY, LLC and MAYOR and CITY COUNCIL OF BALTIMORE | ) ) ) ) ) | Case No.:   1:24-cv-1664 |
| Defendants. | ) ) | |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff The Cincinnati Specialty Underwriters Insurance Company ("CSU"), by counsel, hereby files its Complaint for Declaratory Judgment and states as follows:

1. CSU is a corporation organized under the laws of Delaware with its principal place of business in Ohio.

2. Upon information and belief, Hanover Armory, LLC ("Hanover") is a limited liability company organized under the laws of Maryland with its principal place of business in Maryland.

3. Upon information and belief, Hanover's sole member is Justin Lang, who is a natural person and a citizen of the State of West Virginia.

4. The Mayor and City Council of Baltimore (collectively, "The City") are residents of Maryland.

5. The amount in controversy exceeds $75,000.

6. This Court has subject matter jurisdiction under 28 U.S.C. § 1332.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the alleged events giving rise to this dispute occurred in this District.

8. Pursuant to 28 U.S.C. § 2201, CSU seeks a declaration of the parties' rights and obligations under the liability insurance contract at issue in this proceeding.

9. This insurance coverage dispute arises out of an underlying lawsuit filed by The City against Polymer80, Inc. ("Polymer80") and Hanover, which is captioned *The Mayor and City Council of Baltimore v. Polymer80, Inc., et al.*, Case No. 24C22002482, and pending in the Circuit Court for Baltimore, Maryland (the "Underlying Lawsuit").  The Complaint filed in the Underlying Lawsuit is incorporated herein and is attached hereto as Exhibit 1.

10. The Underlying Lawsuit matter arises from the alleged manufacture, distribution and sale of "ghost guns" in the Baltimore, Maryland area.

11. The City alleges that Polymer80, Inc. manufactures and sells "ghost guns" and ghost gun kits, and further that Hanover is a firearms dealer that allegedly sold ghost guns and ghost gun kits in the Baltimore area.

12. The City further alleges that the presence of ghost guns in the Baltimore area has surged in recent years.  The City alleges that the Baltimore Police Department recovered 9 ghost guns in 2018; 29 in 2019; 126 in 2020; and 324 in 2021.  The City alleges that the Baltimore Police Department is on pace to recover 396 ghost guns in 2022.

13. In the Underlying Lawsuit, The City asserts causes of action against Hanover for nuisance and negligence.

14. The City alleges that Polymer80 and Hanover have created a public health crisis in Baltimore, causing increased costs for medical care, law enforcement, emergency services, social services, public works, and other costs.

15. The City seeks an injunction preventing the sale of ghost guns and ghost gun kits, the establishment of an abatement fund to remediate the public nuisance, civil penalties, compensatory and punitive damages, and costs and attorney's fees.

16. CSU issued insurance policy number CSU0179139 to Hanover for the period December 1, 2021 through December 1, 2022 (the "Policy"). The Policy is attached hereto as Exhibit 2.

17. The Policy affords each occurrence limits of $1 million, and a products-completed operations aggregate limit of $2 million.

18. The Policy uses basic form CG 00 01 04 13, which provides, in pertinent part, as follows:

>   **SECTION I – COVERAGES**
>
>   **COVERAGE A.  BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
>
>   **1. Insuring Agreement**
>
>   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages to which this insurance does not apply.  We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.  But:
>
>   \* \* \*
>
>   b. This insurance applies to "bodily injury" and "property damage" only if:
>
>   (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
>
>   (2) The "bodily injury" or "property damage" occurs during the policy period . . ..

\* \* \*

2. **Exclusions**

    This insurance does not apply to:

    a. **Expected Or Intended Injury**

        "Bodily injury" or "property damage" expected or intended from the standpoint of the insured.  This exclusion does not apply to "bodily injury" resulting from the reasonable use of force to protect persons or property.

\* \* \*

**SECTION V – DEFINITIONS**

\* \* \*

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any these at any time.

\* \* \*

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\* \* \*

17. "Property damage" means:

    a. Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    b. Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

    For purposes of this insurance, electronic data is not tangible property.

    As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems or applications software, hard or floppy disks, cells, data processing devices or any other media which are used with electronically controlled equipment.

Ex. 2, Policy Form CG 00 01 04 13.

19. By endorsement, the Policy includes the Changes to Commercial General Liability Coverage Part form (the "Changes Endorsement"), which provides, in pertinent part, as follows:

**EXCLUSION – PRIOR INJURY OR DAMAGE**

A. The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury and Property Damage Liability:**

This insurance does not apply to any claim for "bodily injury" or "property damage" that:

1. first occurred prior to the Effective date of this Coverage Part;

2. is alleged to be in the process of occurring as of the Effective date of this Coverage Part; or

3. is in the process of settlement, adjustment or "suit".

This exclusion applies to all continuing injury or damage:

1. arising from the same or similar cause including continuous or repeated exposure to substantially the same general harmful conditions; or

2. at the same or adjacent location; or

3. from the same or similar work; or

4. from the same product or service.

\* \* \*

**EXCLUSION – PUNITIVE OR EXEMPLARY DAMAGES**

A. The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury and Property Damage Liability** and Paragraph **2., Exclusions** of **Section I – Coverage B – Personal and Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

5

> Any claim of indemnification for punitive or exemplary damages. If suit is brought against any insured for a claim covered by this Coverage Part, seeking both compensatory and punitive or exemplary damages, we will provide a defense to such action. However, we will not have an obligation to pay for any costs, interest or damages, attributable to punitive or exemplary damages. If state law provides for statutory multiple damage awards, we will pay only the amount of the award before the multiplier is added.

Ex. 2, Policy Form CSGA 401 02 13.

20. CSU is providing a defense to Hanover in the Underlying Lawsuit pursuant to a full and complete reservation of rights.

## CLAIM FOR DECLARATORY RELIEF

21. CSU incorporates realleges and incorporates herein by reference the allegations set forth in paragraphs 1 through 20 above.

21. CSU owes no duty to defend or indemnify Hanover for the claims and allegations asserted in the Underlying Lawsuit.

22. The insuring agreement of the Policy affords coverage for all sums Hanover becomes legally obligates to pay as damages for "bodily injury" or "property damage" taking place during the policy period caused by an "occurrence."

23. The Underlying Lawsuit alleges that Hanover knew or should have known that its sales of ghost guns without background checks or serial numbers would cause harm to the City, which is not an "occurrence" as that term is used and defined in the Policy and which is excluded from coverage by the "expected or intended" exclusion.

24. The Underlying Lawsuit seeks the recovery of purely economic loss in the form of increased costs for medical care, law enforcement, emergency services, social services, public works, and other costs, which are not claims for damages because of "bodily injury" or "property damage" as those terms are used and defined in the Policy.

25.     The Underlying Lawsuit seeks injunctive relief, the creation of an abatement fund and civil penalties, which are not claims for damages because of "bodily injury" or "property damage" as those terms are used and defined in the Policy.

26.     The Underlying Lawsuit seeks the recovery of civil penalties and punitive damages, which are excluded from coverage by the Punitive or Exemplary Damages Exclusion.

27.     The Underlying Lawsuit seeks relief arising from alleged harm that commenced prior to the inception of coverage.

28.     The Policy does not afford coverage for harm taking place prior to inception of coverage.

29.     The Prior Injury or Damage exclusion set forth in the Policy bars coverage for the Underlying Lawsuit because the Underlying Lawsuit seeks damages for injury arising from the same or similar cause (the sale of ghost guns and ghost gun kits), including continuous or repeated exposure to substantially the same general harmful conditions, which commenced prior to the inception of coverage.

30.     An actual controversy exists as to the existence and scope of liability insurance coverage afforded under the Policy for the claims and allegations asserted against Hanover in the Underlying Lawsuit.

31.     CSU is entitled to a declaration that coverage is barred under the Policy for the claims and allegations asserted against Hanover in the Underlying Lawsuit such that CSU owes no duty to defend or indemnify Hanover under the Policy in connection with the Underlying Lawsuit.

WHEREFORE, Plaintiff Cincinnati Specialty Underwriters Insurance Company, respectfully prays for the following relief:

      a.      That this Court declare that Cincinnati Specialty Underwriters Insurance Company owes no duty to defend Hanover in connection with the Underlying Lawsuit.

      b.      That this Court declare that Cincinnati Specialty Underwriters Insurance Company owes no duty to indemnify Hanover in connection with the Underlying Lawsuit.

      c.      That this Court grant such other relief as may be warranted, just, necessary and proper under the circumstances.

Dated:  June 7, 2024                        Respectfully submitted,

**THE CINCINNATI SPECIALTY UNDERWRITERS INSURANCE COMPANY**

By: */s/ W. Benjamin Woody*
    W. Benjamin Woody (Federal Bar No. 21486)
    Harman Claytor Corrigan & Wellman
    1900 Duke Street, Suite 210
    Alexandria, VA 22314
    Phone:    (804) 747-5200
    Fax:        (804) 747-6085
    bwoody@hccw.com

    Thomas S. Garrett (pro hac vice application forthcoming)
    Robert F. Friedman (pro hac vice application forthcoming)
    Harman Claytor Corrigan & Wellman
    P.O. Box 70280
    Richmond, VA 23255
    Phone:    (804) 747-5200
    Fax:        (804) 747-6085
    tgarrett@hccw.com
    rfriedman@hccw.com